[NOT FOR PUBLICATION] [Doc. Nos. 39 & 40]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| KIMBERLY HALPIN, <br><br>          Plaintiff, <br><br>     v. <br><br> CITY OF CAMDEN, et al., <br><br>          Defendants. | Civil No. 05-2088 (RMB) <br><br> **OPINION** |

Appearances:
    Ari R. Karpf
    Karpf, Karpf & Virant
    3070 Bristol Pike
    Building 1, Suite 102
    Bensalem, PA 19020
        Attorney for Plaintiff, Kimberly Halpin

    Mark M. Cieslewicz
    Office of the City Attorney
    City Hall
    P.O. Box 915120
    Camden, NJ 08101
        Attorney for Defendants, City of Camden, Camden City
        Police Department, Rogelio Perez, Edward Spillane, and
        Jilio Rios

    Cheryl L. Cooper
    Holston, MacDonald, Uzdavinis & Ziegler, PC
    66 Euclid Street
    P.O. Box 358
    Woodbury, NJ 08096
        Attorney for Defendant, Maurice Gibson

**BUMB**, United States District Judge:

    This matter comes before the Court upon motions for summary

1

judgment by Defendant City of Camden Police Detective Maurice Gibson, and Defendants City of Camden, and City of Camden Police Detectives Rogelio Perez, Edward Spillane, and Julio Rios. Plaintiff, Kimberly Halpin, has filed a Complaint under 42 U.S.C. § 1983 alleging violations of her constitutional right to be free of unreasonable seizures. Defendants argue they are entitled to qualified immunity from Plaintiff's suit, and that Plaintiff has insufficient evidence to proceed on her claims. For the reasons discussed below, Defendants' motions will be denied in part and granted in part.

I.   Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The record is construed in the light most favorable to the non-moving party, and that party is granted all reasonable inferences therein. <u>Anderson v. Conrail</u>, 297 F.3d 242, 247 (3d Cir. 2002). The ultimate question is "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not."

Anderson, 477 U.S. at 254.

Summary judgment against a party who bears the burden of proof at trial, as Plaintiff does here, is proper if after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under such circumstances, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323 (internal quotations omitted). Further, "the moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id.

## II. Statement of Facts

The following facts are taken from the record and viewed in the light most favorable to Plaintiff, as the non-moving party.

Plaintiff, Kimberly Halpin came to Camden, New Jersey, on June 18, 2004, to attend a concert at the Tweeter Center. While leaving the concert that night Plaintiff was assaulted and robbed. The attackers pushed Plaintiff to the ground causing her

pants to rip, her knee to bleed, and causing other injuries. Plaintiff had her watch, backpack and other personal items taken from her while she was on the ground.  The attackers then fled.

Immediately after the attack Plaintiff flagged down a City of Camden police officer who drove Plaintiff around for a short while looking for her attackers.  After a fruitless search Plaintiff was driven to the City of Camden Police Administration Building and told to go inside and file a complaint.  Once inside Plaintiff found an unattended window and began ringing the buzzer.

Defendant Gibson, a City of Camden police Detective on duty that night, testified that he heard someone ringing the front buzzer repeatedly.  At the window he found Plaintiff who told him "I just got attacked.  I got mugged.  Someone stole something from me."  (Gibson Dep. at 30:1-4).  Gibson testified that Plaintiff was crying and had been hurt.  Gibson tried to get Plaintiff to calm down but the more he asked her questions the more upset she got.  Gibson repeatedly asked Plaintiff to calm down to no avail.  Given Plaintiff's condition Gibson felt it would be inappropriate to bring her to his desk.  So Gibson left Plaintiff at the window testifying, "I walked away from her.  I said, let her relax a minute and then I'll address her concerns.  Maybe she gets her breath and get herself together. . . .  So it was best that I just leave her out there for the moment."

(Gibson Dep. at 57:17 - 58:3).

Left at the window, bleeding and unable to get assistance from Gibson, Plaintiff rang the buzzer again. Gibson returned and asked her to calmly tell him what happened. Plaintiff began telling Gibson what happened, but cursed and used "foul language to describe the people that assaulted her." (Id. at 58:14-15). Gibson alleges Plaintiff used racial slurs to describe her attackers and was told she could not talk like that in the police station. Gibson asked her if she needed medical attention and Plaintiff said no. Gibson told Plaintiff that if she did not calm down she would be arrested. Plaintiff responded with incredulity, asking why he would "lock up" the victim. At this point Gibson went into the lobby with Defendant Rios and cuffed Plaintiff.

Plaintiff denies she used any foul language and denies using racial slurs. In fact, Plaintiff's version of the events is very different and brief:

> [Gibson] said he heard me the first time [I rang the bell], and I didn't have to keep ringing the bell. I got upset by the way he was talking to me. I started to cry more. I told him that I was robbed, and that I needed to use the phone. And he said I was hysterical, and he pulled my arms behind my back and put me in handcuffs.

(Halpin Dep. 71:16-22). None of the other Defendants heard Plaintiff make any racist remarks.

Gibson stated that he arrested Plaintiff because he was

concerned she might hurt herself or someone else.  Gibson charged Plaintiff with disorderly conduct for her offensive language under N.J. Stat. Ann. § 2C:33-2b.  Once in handcuffs, Defendants Gibson and Rios brought Plaintiff back to a holding cell and left her there.

    Inside the cell Plaintiff was able to free one of her hands from her cuffs.  Plaintiff testified that when the Defendants discovered she had freed herself from her handcuffs they pulled her up from the ground and, while holding her by her upper arms, tried to put her back in handcuffs; she described this as being thrown around.  Plaintiff testified that two officers re-cuffed her but only knows the identity of one, Gibson.  (Halpin Dep. at 81:3-10).  The identity of the second officer is in question by virtue of each Defendants' total inability to recall anything about who else was working on the night in question.  (See, e.g., Gibson Dep. at 37:6 - 37:1; Spillane Dep. at 25:16-19).  For reasons discussed below, it is irrelevant exactly who re-handcuffed Plaintiff and it will be assumed that every named Defendant was involved.  As Defendants attempted to re-cuff Plaintiff she resisted and tried to pull away.  After this incident Plaintiff developed large bruises on both of her upper arms, and was sore for several days.

    After an undetermined amount of time, Defendants took Plaintiff's information and released her with a summons.  Outside

the Police Administration Building Plaintiff flagged down a taxi who called Plaintiff's family to come to Camden to get her.

Plaintiff filed a Complaint in this Court on April 20, 2005. Plaintiff's Complaint alleges four counts.  In Count 1 Plaintiff alleges all the individual Defendants, Gibson, Perez, Rios, and Spillane, affected an unlawful arrest and used excessive force, both in violation of the Fourth Amendment.  Count 2 alleges all Defendants, including the City, violated Plaintiff's Constitutional rights through a practice or custom of negligent hiring, training and retention.  Counts 3 and 4 allege that the individual Defendants conspired to violate Plaintiff's constitutional rights and failed to prevent the others from violating her constitutional rights.  Defendants now move for summary judgment on all Counts.

III. Analysis

Defendants, City of Camden Police Department moves for summary judgment on the grounds that it cannot be a named Defendant because it is an agency of the City.  The City of Camden moves for summary judgment on all claims based on a lack of evidence.  The individual Defendants move for summary judgment on the grounds of qualified immunity and insufficient evidence.

Plaintiff has conceded all of her claims against the City and the City Police Department.  (Pl.'s Br. in Opp. at 13).

Plaintiff has also conceded all of her claims against the individual defendants save Count 1. (Id.). Plaintiff's sole remaining Count asserts that the individual Defendants arrested Plaintiff unlawfully; and that the individual defendants used excessive force while Plaintiff was in custody.

Defendants argue that they are protected by qualified immunity from Plaintiff's claim of unlawful arrest. It is important to resolve qualified immunity issues early on in a case. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). It calls for a multi-step analysis, considered in proper sequence. Saucier v. Katz, 533 U.S. 194, 200 (2001). The Court must first determine if the facts alleged, taken in the light most favorable to the injured party, show a constitutional violation. Id. at 201. The second inquiry concerns whether there was a reasonable mistake of fact or law. Butz v. Economou, 438 U.S. 478, 507 (1978). A mistake of law concerns whether the right was clearly established such that an objectively reasonable officer could not be mistaken that his conduct violated that right. Saucier, 533 U.S. at 205-06. A mistake of fact concerns whether an officer made a reasonable mistake of fact. Butz, 438 U.S. at 507; see also, Couden v. Duffy, 446 F.3d 483, 502 (3d Cir. 2006) (Weiss, J., dissenting).

Plaintiff alleges Gibson violated her Fourth Amendment right

8

to be free from unreasonable seizures when he arrested her.  An arrest without probable cause is an actionable unlawful arrest.  <u>Patzig v. O'Neil</u>, 577 F.2d 841, 848 (3d Cir. 1978).  Probable cause exists when the facts are such that a reasonably prudent person would believe that a crime had been committed.  <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111 (1975).  Defendant Gibson agues that the facts alleged show he had probable cause to arrest Plaintiff for disorderly conduct under N.J. Stat. Ann. § 2C:33-2b.  (Def.'s Br. at 5).  In the event he lacked probable cause, he concedes that Plaintiff's right to be free from unlawful arrest is clearly established, but asserts that the absence of probable cause was the product of an objectively reasonable mistake of fact.  (<u>Id.</u>).  This is then a fact intensive inquiry in which the Court is to accept the non-moving party's evidence - here, the Plaintiff - and grant all reasonable inferences therein.

Gibson testified that he heard someone ringing the front buzzer repeatedly.  (Gibson Dep. at 29:24-30:1).  At the window he found Plaintiff who told him "I just got attacked.  I got mugged.  Someone stole something from me."  (<u>Id.</u> at 30:1-4).  Gibson testified that Plaintiff was crying and had been hurt.  (<u>Id.</u> at 33).  Gibson tried to get Plaintiff to calm down but the more he asked her questions the more upset she got.  (<u>Id.</u>).  Gibson repeatedly asked Plaintiff to calm down to no avail.  (<u>Id.</u> at 32-34).  Given Plaintiff's condition Gibson felt it would be

9

inappropriate to bring her to his desk. (<u>Id.</u> at 57:15-23). So Gibson left Plaintiff at the window testifying, "I walked away from her. I said, let her relax a minute and then I'll address her concerns. Maybe she gets her breath and get [sic] herself together. . . . So it was best that I just leave her out there for the moment. (<u>Id.</u> at 57:17-58:3).

Left at the window, bleeding and unable to get assistance from Gibson, Plaintiff rang the buzzer again. Gibson returned and asked her to calmly tell him what happened. (<u>Id.</u> at 58). Plaintiff began telling Gibson what happened, but cursed and used "foul language to describe the people that assaulted her." (<u>Id.</u> at 58:14-15). Gibson alleges Plaintiff used racial slurs to describe her attackers and was told she could not talk like that in the police station. (<u>Id.</u> at 59). Gibson asked her if she needed medical attention and Plaintiff said no. (<u>Id.</u> at 60). Gibson told Plaintiff that if she did not calm down she would be arrested. (<u>Id.</u> at 60:22-61:1). Plaintiff responded with incredulity, asking why he would "lock up" the victim. (<u>Id.</u> at 61:2-3). At this point Gibson enlisted the help of Defendant Rios and together they arrested Plaintiff. (<u>Id.</u> at 61:6-12; Perez Dep. at 18:14-23).

Plaintiff denies she used any foul language and denies using racial slurs. (Halpin Dep. 75:21-24). In fact, Plaintiff's version of the events is:

10

> [Gibson] said he heard me the first time [I rang the bell], and I didn't have to keep ringing the bell.  I got upset by the way he was talking to me.  I started to cry more.  I told him that I was robbed, and that I needed to use the phone.  And he said I was hysterical, and he pulled my arms behind my back and put me in handcuffs.

(Halpin Dep. at 71:16-22).  The other officers, including Defendant Rios, testified that they did not hear Plaintiff use racial slurs.  (See Spillane Dep. at 25:1-2; Perez Dep. at 39:15-20; Rios Dep. at 25:3-5).

Gibson stated that he arrested Plaintiff because he was concerned she might hurt herself or someone else.  (Id. at 61:17-18; 63:25-64:4; 64:13-16).  Gibson charged Plaintiff with disorderly conduct for her offensive language under N.J. Stat. Ann. § 2C:33-2b.  It should be noted that subsection b addresses only language and that other subsections of the statute address behavior.  Specifically the subsection states:

> A person is guilty of a petty disorderly persons offense if, in a public place, and with purpose to offend the sensibilities of a hearer or in a reckless disregard of the probability of so doing, he addresses unreasonably loud and offensively coarse or abusive language, given the circumstances of the person present and the setting of the utterance, to any person present.

Id.  Significantly problematic for Defendants Gibson and Rios is the conclusion reached by New Jersey's courts that Section 2b is unconstitutional for over-breadth when applied to language short

11

of that which would incite the hearer to immediate violence.[1]  <u>In re H.D.</u>, 206 N.J. Super. 58, 61 (App. Div. 1985).  The section can lawfully be enforced against language that would cause an immediate breach of the peace, or move the hearers to present violence only.  <u>Id.</u>  Thus, Defendants' arrest of Plaintiff was reasonable if they had probable cause to believe that Plaintiff (1) was in a public place; and (2) used language that, under the circumstances, risked immediate or present violence; and (3) was intentionally or recklessly indifferent to that risk.  It is not disputed that Plaintiff was in public.  The questions are whether a reasonable person could conclude, under the circumstances, that Plaintiff's language risked immediate violence and whether Plaintiff was intentionally or recklessly indifferent to that risk.

    The Court starts with the circumstances and the setting.  The circumstances are not in dispute, were known to both parties, and are the circumstances that could be expected in a police department lobby: Plaintiff was the victim of a crime, was injured and bleeding, and had come in seeking help.  The events had upset Plaintiff, and Gibson was aware that Plaintiff was upset.  The setting, the police station lobby, was, as Defendant

---

[1] None of the parties brought this to the Court's attention.  Indeed, only the City informed the Court as to exactly what statute Gibson and Rios alleged Plaintiff violated.

Rios testified, one where loud commotions were a common occurrence. (Rios Dep. at 22:23-24:21) Although the record is silent on whether there were other people in the lobby, the evidence indicates that the Defendants were busy talking with and processing other complainants. (See, e.g., Perez Dep. at 17:6-23).

In light of the circumstances the question is whether Plaintiff's conduct risked immediate violence. As police officers, defendants should not be moved to violence by commotion and hysterical language from someone they know has just been the victim of an assault and robbery. Indeed, Gibson, who is African-American, testified that the alleged racial slurs did not bother him because he is "a police officer . . . [who is] doing a job." (Gibson Dep. 86:1-6). Assuming others were present, but accepting, as the Court must, that Plaintiff used foul language only and not racial slurs, it is unreasonable to believe other listeners would be moved to violence by Plaintiff's carrying on. Indeed, there is nothing to suggest that, under the circumstances and the setting, Plaintiff created a risk of immediate violence by her words never mind being recklessly or intentionally indifferent to such risk. Moreover, the Court is satisfied that, were section 2b a constitutional prescription against language that merely offended the hearer, the circumstances in this case do not rise to that level. Under the facts of this case,

Plaintiff's language and hysterics could not have offended the sensibilities of the reasonable listener.  Thus, Gibson and Rios lacked probable cause to arrest Plaintiff for disorderly conduct under N.J. Stat. Ann. § 2C:33-2.

The next step of the analysis requires an examination of whether Gibson and Rios possessed an objectively reasonable belief that they had probable cause, notwithstanding the conclusion to the contrary.  <u>Saucier</u>, 533 U.S. at 205-06.  This step has also been characterized as whether Plaintiff's right to conduct herself as she did without fear of arrest was clearly established.  <u>Saucier</u>, 533 U.S. at 205.  The disorderly conduct statute had been held unconstitutional over twenty years ago.  Moreover, the decision is unambiguous in its holding and continues to be recognized as good law, <u>see</u> <u>State v. Duncan</u>, 376 N.J. Super. 253, 261 n.3 (App. Div. 2005).  Accordingly, no officer could have an objectively reasonable belief that he could arrest Plaintiff for merely using foul language.

Similarly, there is no objectively reasonable mistake of fact that would justify Plaintiff's arrest.  <u>See</u>, <u>Butz</u>, 438 U.S. at 507.  One example of a reasonable mistake of fact would be where an officer makes a reasonable, but incorrect, inference based on known facts, or arrests the wrong individual because of a reasonable mistake in identity.  <u>See, e.g.</u>, <u>Couden v. Duffy</u>, 446 F.3d 483, 205 (3d Cir. 2006) (Weiss, J., dissenting).  Here,

14

however, Defendants do not suggest and the Court cannot perceive an objectively reasonable mistake of fact would lead them to conclude that Plaintiff's conduct risked immediate violence.

Accordingly, because Gibson and Rios lacked probable cause to arrest Plaintiff for disorderly conduct, and no objectively reasonable mistake of fact or law excuses the lack of probable cause, Gibson and Rios are not entitled to qualified immunity on Plaintiff's claim of unlawful arrest.

Defendants also asserts a qualified immunity from suit on Plaintiff's claim of excessive force. Plaintiff claims she was subjected to excessive force while in custody that resulted in dramatic bruising to her arms, and that left her arms in pain. Use of excessive force constitutes an unlawful seizure under the Fourth Amendment. Couden, 446 F.3d at 496. Conduct constitutes excessive force if, given the totality of the circumstances, the force used is objectively unreasonable to effect a given end such as an arrest. Id. at 496-97.

Plaintiff claims Defendants first employed excessive force when they arrested her in the lobby. Plaintiff states, without support or argument, that "the mere arrest itself with the use of handcuffs alone was excessive force, as no crime had ever been committed . . . ." (Pl.'s Br. in Opp. at 18). Plaintiff has not identified, however, a single case in support of the idea that an unlawful arrest is per se excessive force. As noted above,

15

excessive force is the use of an objectively unreasonable amount of force which amounts to an unreasonable seizure. <u>Couden</u>, 446 F.3d at 496. The Fourth Amendment right to be free from unreasonable seizures is violated by either an unlawful arrest or the use of excessive force. Neither is a right in itself but rather they are two forms that a violation of the right may take. An unreasonable seizure that takes one form - an unlawful arrest - is not also an unreasonable seizure of another form - the use of excessive force. Accordingly, Plaintiff cannot state a claim of excessive force based on the mere fact that she was arrested without probable cause.

Plaintiff's other excessive force claim concerns the force the officers employed to re-cuff her after she slipped one of her hands out of her handcuffs. Plaintiff testified that when the officers, assuming for the moment that it was all of the named Defendants, discovered she had freed herself from her handcuffs they pulled her up from the ground and, while holding her by her upper arms, tried to put her back in handcuffs; she described this as being thrown around. (Halpin Dep. at 106:24 - 107:4). While this was occurring Plaintiff was resisting the officers in their efforts. (<u>Id.</u> at 107:18; 122:14-18). After this incident Plaintiff developed large bruises on both of her upper arms, and was sore for several days.

Here, Plaintiff was already under arrest but still entitled

16

to be free from additional unlawful seizures in the form of excessive force. The reasonableness of the force used depends on a number of factors including, but not limited to:

- the severity of the crime at issue;
- the threat posed by the suspect;
- whether the suspect is resisting;
- whether the force applied lead to injury;
- the duration of the force applied;
- the context of the force;
- whether the suspect is armed; and
- the number of persons with whom the police must contend at one time.

Sharrar v. Felsing, 128 F.3d 810, 821-22 (3d Cir. 1997) (internal quotations omitted). In light of the non-exhaustive factors set out in Sharrar, the Court concludes that Plaintiff was not subjected to excessive force.

Officer Gibson arrested Plaintiff as a disorderly person which is neither a violent crime nor a very serious one. Moreover, although Gibson testified that he feared Plaintiff may hurt herself or someone else there is no evidence that she posed a credible threat to anyone's safety. Nonetheless, Plaintiff was in custody - albeit unlawfully for purposes of this motion - and handcuffed in a cell. When it was discovered she had escaped her restraints she resisted the officers' efforts to re-cuff her. Because Plaintiff was resisting the officers held her firmly by her upper harms which unavoidably led to painful bruising but no permanent injury. Plaintiff has not suggested a manner in which the police could restrain a resisting subject without forcibly

17

holding the subject. The officers held Plaintiff as described until she was re-cuffed. In the context of all of the above, taken in the light most favorable to Plaintiff, the force the officers employed was not objectively unreasonable. Accordingly, because Plaintiff's right to free from excessive force was not violated, all Defendants are entitled to qualified immunity on this claim.

The final consideration is the argument of Defendants Spillane, Rios, and Perez, that Plaintiff has no evidence of their involvement in her arrest. Indeed, in order to be personally liable, a defendant must have participated in a violation of one's constitutional rights, directed others to violate them, or, as a supervisor acquiesced in a subordinate's violations. Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Plaintiff testified that two officers arrested her in the lobby of the police station that night. (Halpin Dep. at 70-72). Defendant Gibson testified that he arrested Plaintiff with the assistance of another officer. (Gibson Dep. at 61:6-13). Defendant Perez testified that he believes it was Defendant Rios. (Perez Dep. at 18:14-23). In the end, Defendant Spillane gave Plaintiff a summons signed by Gibson. There is no evidence that Defendant Perez participated in the arrest of Plaintiff in the lobby. Defendant Spillane did not participate because Plaintiff's unlawful arrest occurred when she was seized in the

18

lobby by Gibson and Rios, not when he delivered a summons signed by another Defendant. See Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007) (stating claim for unlawful arrest accrues when the arrest occurs). Accordingly, Defendants Gibson and Rios are not entitled to summary judgment on this ground. Defendants Spillane and Perez, however, are entitled to summary judgment on Plaintiff's claim of unlawful arrest because they were not involved in the alleged violation of her rights.

In summary, Plaintiff has dismissed all claims against the City of Camden. Plaintiff has also dismissed all claims against the individual Defendants except the claims for unlawful arrest and excessive force. Defendants Gibson and Rios are denied qualified immunity on Plaintiff's claim for unlawful arrest. All Defendants are granted qualified immunity on Plaintiff's claim for excessive force. Finally, Defendants Spillane and Perez are granted summary judgment on Plaintiff's claim for unlawful arrest. Accordingly, the case goes forward on Plaintiff's sole remaining claim of unlawful arrest against Defendants Gibson and Rios.

IV. Conclusion

For the reasons discussed above, Defendants City of Camden, Perez, Spillane, and Rios' motion for summary judgment is granted in part and denied in part. Defendant Gibson's motion for

summary judgment is denied in part and granted in part.  An appropriate order will issue this date.


Date: May 21, 2007

                                          s/Renée Marie Bumb
                                          RENÉE MARIE BUMB
                                          United States District Judge