## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KIMBERLY HALPIN | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 1:05-CV-2088 |
| | : | |
| DETECTIVE MAURICE GIBSON | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

**AND NOW**, this _____ day of _____ , 2009, upon consideration of Plaintiff's

Petition for Counsel Fees, it is hereby **ORDERED** and **DECREED**:

Plaintiff is awarded _____ in attorney's fees.


_____
Hon. Renee Marie Bumb, U.S.D.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

KIMBERLY HALPIN                         :

                          :       CIVIL ACTION

        Plaintiff,                      :

                          :

        v.                              :       No. 1:05-CV-2088

                          :

DETECTIVE MAURICE GIBSON                 :

                          :

        Defendant.                      :

## PLAINTIFF'S PETITION FOR ATTORNEY'S FEES

Plaintiff, by and through her undersigned counsel, hereby aver as follows in support of her Petition for Attorney's Fees:

1.      On April 20, 2005, Plaintiff initiated a lawsuit against the City of Camden and 4 police officers including Defendant Gibson. (Docket Entry # 1).

2.      The lawsuit alleged unlawful arrest and excessive force under 42 U.S.C. Section 1983.

3.      A jury trial in this matter was held from August 4, 2009 through August 7, 2009 wherein a verdict was entered in favor of Plaintiff and against Defendant Gibson, the only remaining Defendant.

4.      Plaintiff now files the instant Petition for Attorney's Fees, and in support thereof, attached hereto a Memorandum of Law (which is incorporated herein by reference).

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court grant her Petition for Attorney's Fees.

Respectfully submitted,

**KARPF, KARPF & VIRANT, P.C.**

/s/ Ari R. Karpf
Ari R. Karpf, Esq.

**TIMOTHY M. KOLMAN & ASSOCIATES**

/s/ Wayne A. Ely
Wayne A. Ely, Esq.

Date: August 21, 2009

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY HALPIN : | CIVIL ACTION |
| Plaintiff, : | |
| v. : | No. 1:05-CV-2088 |
| DETECTIVE MAURICE GIBSON : | |
| Defendant. : | |

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S PETITION FOR ATTORNEY'S FEES

Plaintiff, by and through her undersigned counsel, hereby aver as follows in support of her Petition for Attorney's Fees:

**I.**     **A prevailing Plaintiff in a § 1988 is entitled to attorney's fees.**

Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, a district court has the authority to award reasonable attorney's fees to the prevailing party in a §1983 case. *City of Riverside v. Rivera,* 477 U.S. 561, 567, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). A party need not prevail on all issues litigated, but must succeed on at least some of the merits. *Id.* at 570, 106 S.Ct. 2686.

Plaintiff is requesting attorney's fees pursuant to 42 U.S.C. § 1988. Section 1988(b) states in pertinent part:

> [i]n any action or proceeding to enforce a provision of section [ ] ... 1983 ... of this title ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

> 42 U.S.C. § 1988(b).

Plaintiff brought and was successful on a false arrest claim under Section 1983. Therefore, the use of Section 1988 is appropriate.  Moreover, "although § 1988(b) expressly refers to a district court's discretion, it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances." *Truesdell v. Philadelphia Hous. Auth.,* 290 F.3d 159, 163 (3d Cir.2002)(internal quotation marks omitted). *See also Circle School v. Phillips*, 270 F.Supp.2d 616 (E.D. Pa. 2003)(attorney's fees in a 1983 claim should be awarded absent special circumstances); *Desi'z Pizza, Inc. v. City of Wilkes-Barre*, WL 2460881 at * 2, fn. 9 (M.D. Pa. 2006)(If the Plaintiffs prevail in their § 1983 claim, they are entitled to attorney's fees under § 1988); *Warms v. Springfield Tp.*, WL 1995 (E.D. Pa. 1995)(same); *Bolden v. Southeastern Pennsylvania Transp. Authority*, 897 F.Supp. 188 (E.D. Pa. 1995(As the prevailing § 1983 party, [a] plaintiff is statutorily entitled to reasonable attorney's fees and costs).

In, *Ashley v. Atlantic Richfield Co.*, 794 F.2d 128, 133-134 (3d Cir. 1986), the Court explained that civil rights plaintiffs who only receive partial or smaller verdicts are entitled to attorney's fees under §1988, stating:

> To fully appreciate the intended scope of the prevailing party analysis, the policy objectives that inspired the enactment of §1988 must be considered. "In enacting §1988, Congress rejected the traditional assumption that private choices whether to litigate, compromise, or forgo a potential claim will yield a socially desirable level of enforcement as far as the enumerated civil rights statutes are concerned." *Hensley,* 461 U.S. at 444, 103 S.Ct. at 1945. (Brennan, J. concurring in part, dissenting in part). ***Rather, Congress recognized that "[i]n many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer," and concluded that "[i]f our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.***" S.Rep. No. 1011, 94th Cong., 2d Sess. 2, 6, *reprinted in* 1976 U.S. Code Cong. & Ad.News 5908, 5910, 5913. Thus, in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983),

the Supreme Court observed that the prevailing party standard is a "generous formulation" that entitles even those civil rights plaintiffs who obtain only partial relief to an award of attorney's fees. *See Hensley,* 461 U.S. at 433, 436-37, 103 S.Ct. at 1939, 1941 ...

Ashley, 794 F.2d at 133-134. (emphasis added).

Congress' intent in enacting § 1988 was to attract competent counsel to prosecute civil rights cases, where "victims ordinarily cannot afford to purchase legal services at the rates set by the private market." *City of Riverside v. Rivera,* 477 U.S. 561, 576, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (plurality opinion). Therefore, "a court's discretion to deny fees under § 1988 is very narrow and ... fee awards should be the rule rather than the exception." *Herrington v. County of Sonoma,* 883 F.2d 739, 743 (9th Cir.1989) (internal quotation marks omitted).

## II.   Plaintiff's $1.00 nominal damages award and $100.00 punitive damages award entitle her to attorney's fees

Some defendant entities and individual defendants over time have attempted to claim that successful plaintiff's with "nominal" damage verdicts are not entitled to a recovery of attorney's fees.  Plaintiff anticipates that Defendant in the instant case may make such an assertion, and given the possibility of such an assertion, explains thoroughly herein that such an assertion in the instant case would be baseless.[1]

### A. Defendants sometimes cite the holding in *Farrar* when they generically assert that attorney's fees are not appropriate in nominal damage cases.[2]

In 1992, the Supreme Court addressed a very extreme set of facts concerning nominal damages in the matter of *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

---

[1] It is worth noting at the outset that because Plaintiff was awarded punitive damages in any amount that, by definition, her recovery is not considered "nominal."  This is explained *infra.*  Moreover, Plaintiff provides the relevant jurisprudence interpreting fee petitions in similar circumstances for this Court's convenience as well.

[2] Defendant's attempt to rely upon Farrar in this case would be in bad faith though because the Third Circuit has already determined in almost identical circumstances as herein (without a punitive award) that plaintiffs with $1.00 verdicts are entitled to attorney's fees.

In *Farrar*, the Court held that a plaintiff was not entitled to attorneys fees wherein he only obtained "nominal" damages due to the circumstances of that case (which were very unusual). *Id.*

In *Farrar,* state officials closed a school for troubled teens. *Farrar,* 506 U.S. at 105. The owner sued, alleging deprivations of due process. *Id.* at 106. The plaintiff and his administrators after his death, ***sought only monetary relief in the form of $17 million*** in damages. *Id.* (emphasis added). The jury found, through special interrogatories, that just one of the six defendants had deprived Farrar of a civil right. *Id.* **However, the jury expressly found that the defendant's conduct did not proximately cause Farrar's asserted damages**. *Id.* The district court ultimately awarded nominal damages of $1 and attorney's fees. *Id.* A divided panel of the Fifth Circuit reversed the award of fees, holding that the plaintiffs were not prevailing parties, and were thus ineligible for fees under § 1988. *Id.*

The Supreme Court affirmed in a 5-4 decision, but on different grounds. The Court held that a plaintiff who is awarded nominal damages is a prevailing party for the purposes of § 1988. *Id.* at 114. However, the Court also stated that, "[a]lthough the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Id.* In determining the reasonableness of fees under §1988, the Court continued, " 'the most critical factor ... is the degree of success obtained.' " *Id.* at 114 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The Court explained, accordingly, when a plaintiff seeking compensatory damages "recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is *usually* no fee at all." *Id* . at 115 (emphasis added) (internal citation omitted).

Justice O'Connor joined the other four justices (which ultimately created a majority opinion), but she filed a concurring opinion that further elaborated on the degree of success inquiry. Justice O'Connor's opinion has become the most important aspect of the holding in *Farrar* because the majority of Circuits, including the Third Circuit, base their interpretation of nominal damage fee petition cases on the holding of Justice O'Connor.

While she acknowledged that the disparity between the damages sought and awarded was important in determining the degree of success, she stated that this "is not the only consideration." *Id.* at 121 (O'Connor, J., concurring). She asserted that "an award of nominal damages can represent a victory in the sense of vindicating rights even though no actual damages are proved." *Id.* Justice O'Connor stated that "courts also must look to other factors" in assessing success, including "the significance of the legal issue" decided, and whether the decision "accomplished some public goal." *Id.* at 121-22. Upon considering all of these "relevant indicia of success," Justice O'Connor concluded that *Farrar's* victory was *de minimis. Id.* at 122.

Plaintiff's instant case differs from the facts in Farrar in several material ways: (1) Plaintiff did not just get a nominal verdict of $1.00, but rather, received a separate component of punitive damages; (2) Plaintiff did not seek 17 million dollars at trial, but rather, instructed the jury that recognition of a civil rights violation **was her primary sought relief** and that whatever it chose to award her in addition to such recognition was its choice; (3) Plaintiff did not make allegations about a personal property interest being impacted, but rather, a 4th Amendment right to be free from unlawful arrest – which (as explained *infra*) the Third Circuit has since expressly stated is a basis for recovery of attorney's fees regardless of whether only nominal damages are awarded; and (4) contrary to the verdict in *Farrar*, the jury in this case specifically returned a

verdict stating that damages sustained by Plaintiff *__were__* the proximate or legal cause of acts by Defendant Gibson.

As explained *infra*, Third Circuit jurisprudence dictates that Plaintiff be entitled to attorney's fees in this case.

### B. The Third Circuit's interpretation of *Farrar* dictates that Plaintiff be awarded attorney's fees.

Since the holding in *Farrar*, the Third Circuit has made it very clear through its jurisprudence that district courts are directed to take a broad approach in applying the O'Connor factors. *See e.g. Truesdell v. Philadelphia Housing Authority,* 290 F.3d 159 (3d Cir. 159)(reversing denial of attorney's fees by trial court relying upon *Farrar* because the plaintiff establishing a continued entitlement to Section 8 housing was significant enough was not so *de minimus* to deny attorney's fees); *M.W. v. Clementon Board of Education,* 442 F.3d 848 (3d Cir. 2006)(reversing denial of attorney's fees by trial court relying upon *Farrar* because the plaintiff being returned to school with an accommodation was not *de minimus* relief). While these cases are not similar to facts or claims of Plaintiff, they served to set the broad perspective taken by the Third Circuit and the required application of Justice O'Connor's factors.

In a case that is much more similar to the instant case, *Buss v. Quigg*, 91 Fed.Appx. 759 (3d Cir. 2004), the Court reviewed a district court's award of attorney's fees in a case wherein the jury awarded $1.00 in nominal damages. The Third Court explained that the district court had granted summary judgment as to at least 6 claims and that before trial 3 individual defendants were dismissed leaving only 1 individual police officer as a defendant. *Id.* at 760.

The plaintiff in *Farrar* proceeded to trial on only claims of unlawful entry into plaintiff's home and excessive force. *Id.* The jury concluded that there was only a 4th Amendment violation as to unlawful entry into the plaintiff's home but no excessive force had been used. *Id.*

The Court in *Buss* expressly held that under Farrar, success on a 4th Amendment claim for unreasonable search or seizure **_is "significant relief._"** The Court further explained that success on Fourth Amendment claims for unlawful search or seizure specifically have a high level of significance because of the "public purpose of deterring such behavior." The Court determined that because the 4th Amendment claim was a primary claim in the plaintiff's case, coupled with the public importance of such a proven violation, that the plaintiff was entitled to recover attorney's fees notwithstanding the $1.00 nominal damage verdict. Despite that multiple defendants had been dismissed from the case and that more than 60% of the plaintiff's claims had been dismissed, the trial court's award of $34,660.00 in attorney's fees of $35,560.00 sought was affirmed by the Third Circuit.

The facts before the Third Circuit have many similarities to the instant case. Three (3) officers were dismissed from the instant case, but only 1 of Plaintiff's 2 claims was dismissed on summary judgment. Plaintiff's primary claim throughout the case has been false arrest - specifically in violation of the 4th Amendment. However, in addition to $1.00 in nominal damages, the jury found that Plaintiff had suffered damages by Defendant Gibson and also awarded $100.00 in punitive damages. Under the logic and analysis expressed in *Buss*, Plaintiff is entitled to petition for reasonable attorney's fees.

The most recent case in the Third Circuit to address a petition for attorney's fees in a nominal damage award case is the holding in *Jama v. Esmor Correctional Services, Inc.*, WL 2449604 (3d Cir. 2009), which was issued 5 days after the verdict in the instant case. This case is very instructive because the Third Circuit elaborated on specific principles governing trial courts in the Third Circuit regarding fee petitions in nominal-damage cases.

In *Jama*, the Court explained that the majority of Circuits around the United States follow the same view as in the Third Circuit, that trial courts should apply the facts set forth by Justice O'Connor. *Id.* at * 14. In concluding that the majority of Circuits follow the Third Circuit's approach, the Court gives a brief survey of the following citations and decisions.

In *Mercer v. Duke University,* 401 F.3d 199 (4th Cir.2005), a female college football player brought a Title IX discrimination claim against a university after she had been cut from the football team. *Id.* at 201. Although the plaintiff was awarded only nominal damages, the Court of Appeals for the Fourth Circuit upheld an award of $350,000 in attorney fees despite the *de minimis* compensatory relief. *Id.* at 211. The court concluded that a fee award was within the district court's discretion because the legal issue on which the plaintiff prevailed was significant and the litigation served a public purpose. *Id.* at 206-09.

In *Diaz-Rivera v. Rivera-Rodriguez,* 377 F.3d 119 (1st Cir.2004), terminated municipal employees sued city officials, alleging that their terminations were motivated by the employees' political affiliations. *Id.* at 121. The plaintiffs brought First Amendment and due process claims. *Id.* The jury found for the defendants on the First Amendment claims and awarded only nominal damages on the due process claim. *Id.* at 122. The district court awarded an attorney's fee, and the Court of Appeals for the First Circuit affirmed. The court of appeals distinguished the facts of the case at bar from those in *Farrar* by applying Justice O'Connor's factors:

> Here, although plaintiffs' victory was *de minimis is* as to the extent of relief, the district court appropriately exercised its discretion to award fees, as the determination that the municipality violated plaintiffs' constitutional rights represented a significant legal conclusion serving an important public purpose.
>
> *Id.*

The Third Circuit in *Jama* also referenced such holdings as *Cummings v. Connell,* 402 F.3d 936, 947 (9th Cir.2005)(awarding $94,369.42 in attorney's fees in nominal damages verdict post-*Farrar*); *Phelps v. Hamilton,* 120 F.3d 1126, 1131 (10th Cir.1997)(case remanded to district court for reasonable attorney's fees to be awarded in nominal damage case under §1983); *Johnson v. Lafayette Fire Fighters Ass'n Local 472,* 51 F.3d 726, 731 (7th Cir.1995)(attorney's fees awarded in nominal damage §1983 case); *Jones v. Lockhart,* 29 F.3d 422, 423-24 (8th Cir.1994)(same).

In *Jama*, the Court explained that Circuits do not interpret *Farrar* to require the automatic denial of fees when only nominal damages are awarded. *Id*. at * 5. Rather, it is the position of the Third Circuit, as with the majority of other Circuits, that a district court should determine the degree of a plaintiff's success and should consider not only the difference between the relief sought and achieved, but also the significance of the legal issue decided and whether the litigation served a public purpose. *Id*.

The trial in *Jama* was premised upon a federal claim under Religious Freedom Restoration Act ("RFRA") wherein the plaintiff was awarded $1.00 but awarded other damages for pendent tort claims. The Third Circuit remanded the case to the trial court for the trial court to determine whether the pendent state claims were so related to the federal claim that fees were warranted under Section 1988, and if not, to apply to the O'Connor factors in considering attorney's fees for a nominal damage verdict.

The Third Circuit and the majority of Circuits clearly require trial courts to apply the O'Connor factors in considering whether to award attorney's fees in nominal damage verdicts. In *Buss*, a case that is similar to Plaintiff's case (but even less compelling as there were no

punitive damages awarded); the Third Circuit has already established Plaintiff's entitlement herein to attorney's fees.

In looking at specific District of New Jersey jurisprudence, the Court in *Butler v. Police Officer Frett*, WL 1806412 (D.N.J. 2006) both applied and interpreted the *Buss* holding. In Butler, the plaintiff sued the City of Camden, the Township of Pennsauken, the Township of Cherry Hill, and several police officers alleging excessive force. *Id.* at * 1. Prior to the trial, every police officer except Officer Frett was dismissed. *Id.* The trial was originally held in 2002 but remanded for a new trial because relevant inquiries were not made into law enforcement bias as requested by counsel during *voir dire*. *Id.* at * 2.

On remand, the matter was reassigned to Judge Kugler for a second jury trial wherein the jury held: (1) that Plaintiff had proven by Frett failed to intervene in the use of excessive force; and (2) that Plaintiff had proven his injuries were proximately caused by Frett's conduct, but the jury only gave a verdict for $1.00 in favor of Plaintiff. *Id.* Plaintiff's counsel thereafter sought attorney's fees via a fee petition. Frett contested an award of attorney's fees based upon the holding in *Farrar*. *Id.*

The Court in *Butler* first determined that the plaintiff was a prevailing party under Section 1988, as the Supreme Court in *Farrar* has held that even plaintiffs who win nominal verdicts are considered prevailing parties. *Id.* at * 4. The Court explained that 5 Circuits including the Third Circuit have applied the O'Connor factors in determining whether to grant attorney's fees in nominal damage cases. *Id.* at * 5.

In a very tedious analysis, the Court in *Butler* looked at each O'Connor factor in determining whether to award attorney's fees. The Court first considered the "extent of relief"

sought by the plaintiff.  In *Butler*, the Court explained that the plaintiff has sought in excess of $100,000 in compensatory and punitive damages from the jury but only received $1.00.

In comparing holdings in other Circuits as compared to the 17 million sought in *Farrar*, the Court held that the discrepancy in money sought versus the recovery did "not rise to the level that concerned [the Supreme Court] in *Farrar*," but rather, was more akin to the differences in *Buss* and other Circuits wherein plaintiff sought more than $100,000.00 but not anywhere near a million dollars. *Id*. at * 5.  In so holding, the Court determined that the extent of relief sought weighed in favor of the plaintiff getting attorneys fees. *Id*. at * 6.

The second factor examined by the Court in *Butler* was the significance of the legal issue upon which the plaintiff prevailed.  The Court explained that in stark contrast to an allegation of a business interest being affected as in *Farrar*, excessive force claims against a person have the level of significance to tip this factor in the plaintiff's favor. *Id*. at * 6.

The third and last factor examined by the Court in *Butler* was the public purpose served in the plaintiff's victory.  The Court explained that "[a]lthough the verdict in Plaintiff's case will not cause a formal change in police policy or training, it does have some recognized public value to the extent that it furthers the "private attorney general" function of the civil rights suits encouraged by Section 1988." *Id*. at * 6 (citations omitted).

The Court distinguished *Butler* from *Farrar,* explaining that a verdict for the improper stoppage of business does not have the deterrent effect of a verdict for the use of excessive force upon individuals. *Id.* The Court analogized the deterrent effect of excessive force to the deterrent effect of a 4th Amendment violation as set forth in *Buss*.  *Id*.  Because all of the factors weighed in favor of awarding attorney's fees, the plaintiff was awarded $55,656.25 in attorney's fees by the Court in *Butler*.

Under the guidance of the holding in *Butler* or the instruction set forth in *Buss*, there is no question that Plaintiff in the instant case should be awarded attorney's fees.  Plaintiff prevailed on her false arrest claim for a 4th Amendment violation.  Not only did she not ask the jury for more than $100,000.00 as in *Buss* or *Butler*, she specifically told the jury recognition of her civil rights being violated *was her primary relief being sought* and that the jury could award her whatever it believed would be appropriate if it concluded such a violation had occurred.  In fact, Plaintiff did not only receive a nominal verdict of $1.00 as in *Butler* or *Buss*, but rather, received a punitive component (however small).

Plaintiff also claimed an injury under the Fourth Amendment of unlawful seizure, which has already expressly been held to be a verdict of high importance by the Third Circuit and similarly in *Butler* (as to a constitutional harm upon an individual as opposed to a business interest).  Under the holdings in both *Butler* and *Buss*, the deterrent effect of a verdict against a police officer for constitutional violations upon an individual weighs in favor of an award of attorney's fees.

### C.   Even though Plaintiff would be entitled to attorney's fees even if she only had a "nominal" damage verdict, she cannot even be legally characterized as having a "nominal" verdict warranting an automatic entitlement to attorney's fees without the need to refer to the O'Connor factors.

A plaintiff who receives damages other than $1.00, however small, removes plaintiff from the category of "nominal." In *Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. 2008), the 9th Circuit Court of Appeals reversed a trial court's denial of attorney's fees in a $1.00 nominal damage (wrongful arrest) case wherein punitive damages were remitted to $5,000.00 stating "[w]hen, as here, the plaintiff wins punitive damages, ***the award of punitive damages alone is sufficient to take it out of the nominal category.***" *Id.* at 1126.  The case was remanded

for the trial court to determine the reasonable attorney's fees in accordance with the fee petition that had been filed by the plaintiff (and which had been denied in whole).

In *Stylers v. Pennsylvania*, 621 F.Supp.2d 239 (M.D. Pa. 2008), a police officer obtained a $1.00 verdict for having his first amendment rights violated and punitive damages. In awarding attorney's fees to the plaintiff, the Court explained that an award of punitive damages alone underscores [the jury's] conclusion regarding the nature of the retaliatory conduct and suggests that [the plaintiff's] victory was more than "purely technical" or nominal. *Id.* at 242.

There are limited cases where plaintiffs are awarded $1.00 verdicts in Section 1988 cases and punitive damages, but jurisprudence supports that when a plaintiff receives more than $1.00, the verdict is not properly considered to be "nominal." Under a "nominal damage" analysis **or** a non-nominal damage analysis, Plaintiff should be entitled to reasonable attorney's fees incurred in the instant case.

### III.   <u>Despite that Plaintiff received a verdict that is substantially less than the attorney's fees sought, such a comparison is not relevant or appropriate for determining the specific amount of reasonable attorney's fees to be awarded.</u>

In *United Auto. Workers Local 259 Social Sec. Dept. v. Metro Auto Center* 501 F.3d 283, 293 (3d Cir. 2007), the Third Circuit Court of Appeals explained that "a court may not diminish counsel fees in a section 1983 action to maintain some ratio between the fees and the damages awarded." *See also Omari v. Waste Gas Fabricating Co., Inc.,* 2005 WL 851345 (E.D. Pa. 2005)(explaining that a court is not entitled to reduce a fee petition merely in the spirit of compromise even when fees are contested).

As set forth herein, Plaintiff's counsel has already excluded from billing time that was expended solely as a result of litigation involving Rios, Spillane, and Perez.  All other billing was a direct result of litigation against the primary officer who arrested Plaintiff.

### IV.   <u>Standard for Determining attorney's fees</u>

The calculus in determining the amount of attorney's fees a prevailing party is entitled to receive in a civil rights action is well-settled. "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate." *See Pennsylvania Envtl. Defense Found. v. Canon-McMillan Sch. Dist.,* 152 F.3d 228, 231 (3d Cir.1998); *Blum v.. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40(1983)). This estimate is called the "lodestar." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990).

Procedurally, the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed.  In a statutory fee case, the party opposing the fee award then has the burden to challenge by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. The district court cannot decrease a fee award based on factors not raised at all by the adverse party. *Id.*

The Supreme Court has held that the reasonable hourly rates applicable to the labors of attorneys for a prevailing party should be **"the prevailing market rate[ ] in the relevant community."** *Blum v. Stenson,* 465 U.S. at 895, 104 S.Ct. 1541. (emphasis added).  In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence in addition to the attorney's own affidavits that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and

reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to-for convenience-as the prevailing market rate. *Id.* at 895 n. 11, 104 S.Ct. 1541.

The Third Circuit held that "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity, rather than the firm's billing rate, is the appropriate hourly rate for computing the lodestar." *Id.* at 1450. To determine the "community market rate," the Third Circuit directed courts "to assess the experience and skill of the attorneys and compare their rates to those of comparable lawyers in the *private* business sphere." *Student Pub. Interest Research Group of New Jersey, Inc. v. AT & T Bell Labs.,* 842 F.2d 1436, 1447 (3d Cir.1988).

The prevailing party has the initial burden of demonstrating that the requested rate is the community market rate. *Rode,* 892 F.2d at 1183. While "[t]he starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, 'proof of the attorney self-designated billing rate is not dispositive.' " *Public Interest Research Group of New Jersey, Inc. v. Windall,* 51 F.3d 1179, 1185 (3d Cir.1995) (citations omitted). The prevailing party's burden may be satisfied by the submission of affidavits of attorneys with personal knowledge of the hourly rates customarily charged in the relevant market. *See e.g., Washington v. Philadelphia County Court of Common Pleas,* 89 F.3d 1031, 1036 (3d Cir.1996). (emphasis added).

"[A] court may not *sua sponte* reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate, either by filing affidavits, or, in most cases, by raising arguments with specificity and clarity in briefs (or answering motion papers). *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir.1989); *See also Omari v. Waste Gas Fabricating Co., Inc.,* 2005 WL 851345 (E.D. Pa.

2005)(U.S.M.J. Hart explains that a court is not entitled to reduce a fee petition merely in the spirit of compromise even when fees are contested).

### V.   The Billing Rates Sought for the Attorneys who Worked this Case

#### A.  Biling Rate for Ari R. Karpf

Ari R. Karpf, Esq. is seeking a reasonable billing rate of $265.00 per hour in the instant Petition and includes his own affidavit to this Memorandum, attached hereto as "Exhibit A," setting forth his credentials, experience, and background.  Mr. Karpf focuses his practice in civil rights and employment litigation. More than eighty percent of his practice is in federal court, and his federal practice is primarily in the Eastern District of Pennsylvania and the District of New Jersey.

Mr. Karpf regularly appears before federal judges in New Jersey and Pennsylvania and has been counsel in more than 10 trials.  In total, Mr. Karpf has litigated more than 340 federal cases (exclusive of state matters). He represents in his own affidavit that based upon his experience, $265.00 per hour is a reasonable billing rate.

In addition to Mr. Karpf's own affidavit, he also includes affidavits from five (5) additional attorneys who are familiar with the billing rates in Southern New Jersey.  Mr. Karpf provides an affidavit of Alan Schorr, a partner who has an office in Cherry Hill and who has practiced civil rights work in Southern New Jersey for more than 15 years and who has litigated extensively in state and federal court therein.  *See* Schorr Affidavit, attached hereto as "Exhibit B."

Mr. Karpf provides an affidavit from a partner/principal running a practice in Voorhees, New Jersey, John Chomko, who has litigated cases in Southern New Jersey for approximately 25 years. *See* Chomko Affidavit, attached hereto as "Exhibit I." Mr. Karpf provides an affidavit

from Alexander Watson, a partner who has an office in Princeton, New Jersey and who has practiced in Southern New Jersey for more than 20 years. *See* Watson Affidavit, attached hereto as "Exhibit C." Mr. Karpf provides an affidavit from Steven Pazan, a former partner of Dilworth Paxson LLP based in Cherry Hill and now with Spector, Gadon & Rosen, P.C. in New Jersey and who has practiced in Southern New Jersey for more than 20 years. *See* Pazan Affidavit attached hereto as "Exhibit D." Mr. Karpf also supports his billing rate with the affidavit from a fifth attorney, Wayne Ely, who served as his co-counsel during trial from Timothy M. Kolman & Associates. *See* Ely Affidavit, attached hereto as "Exhibit E."

All 5 of these attorneys have certified that a billing rate of $265.00 per hour is reasonable for Mr. Karpf.  In addition to the 5 affidavits, Mr. Karpf has provided his own affidavit based upon his area of practice and experience in New Jersey.  Mr. Karpf has therefore provided a total of 6 affidavits in support of his proposed billing rate, 4 of which come from partners at 4 separate law firms who have extensive experience within the Southern New Jersey and Camden community.

Such a billing rate is very reasonable.  Mr. Karpf has in fact been approved at various billing rates as high as $350.00 per hour.  For example, in *Santiago v. Mecca and Sons Trucking Corp.*, L-3868-06 (Hudson County), Mr. Karpf prevailed in a sexual harassment trial and was awarded $350.00 per hour as a reasonable billing rate by the Hon. Frances Antonin, J.S.C.. The billing rate sought by Mr. Karpf in the instant case is reasonable within the Southern New Jersey and particularly the greater Camden community.

### B.  Billing Rate for Wayne A. Ely

Wayne A. Ely is an attorney who has practiced for approximately sixteen (16) years.  He is currently a partner of the law firm of Timothy M. Kolman and Associates, a firm that engages

predominantly in civil rights practice. He engages primarily in the practice of plaintiff's federal employment law and civil rights. He litigates primarily in federal court and seeks a reasonable billing rate of $295.00 per hour.

He supports his reasonable billing rates with affidavits from attorneys Stephen Pazan, Alexander Watson, Alan Schorr, John Chomsky, and Ari Karpf (a total of 5 affidavits in addition to his own affidavit). All of these attorneys support that $295.00 per hour is a reasonable billing rate for the greater Camden community.[3] He also identifies his own credentials in support of the reasonable billing rate in his affidavit, attached hereto as "Exhibit E."

### VI.    The Number of Hours by Plaintiffs' Counsel

At the outset, it is worth noting that Mr. Karpf and Mr. Ely have litigated the instant case for approximately just under 5 years. The case was significantly delayed due to an interlocutory appeal filed by Defendant Gibson post-summary judgment. They have had a tremendous amount of assistance from their respective assistants, secretaries, and paralegals throughout this case (inclusive of telephone calls, copying, scheduling, letters, e-mails, preparation of exhibits for motion practice and responses, preparation of trial exhibits, and other administrative work).

All of this time is billable. *See e.g. Missouri v. Jenkins by Agyei,* 491 U.S. 274, 289, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)(a fee award may include a separate component for secretarial and paralegal services). Courts typically award $75-$95 per hour for the average assistant/paralegal. Yet, Plaintiff's counsel in the instant case is not seeking compensation for any time expended by the paralegals and legal assistants of their respective firms.

---

[3] In the matter of *In re Premier Food Systems, Inc.* WL 5950444 (Bkrtcy D.N.J. 2008), the Bankruptcy Court examined fees charged by attorneys in the Camden area. The Court explained that fees charged by partners in the range of $525 to $625 per hour were reasonable and that senior associates charging $400 to $425 were reasonable.

Additionally, Plaintiff's counsel has already removed any and all billing that was ***only*** related to Defendant's Rios, Perez, and Spillane (who were dismissed at different stages of the litigation).  The billing that was related solely to Rios, Perez, and Spillane totals 35.3 hours and $9,354.50 in billable time.  The specific work excluded from billing is represented in "Exhibit F." The remainder of the time billed by both Mr. Ely and Mr. Karpf represents work, review, preparation, and requests that were undertaken in order to effectively litigate the matter as to Defendant Gibson.

### A.  Hours of Ari Karpf for which he seeks compensation

The hours expended by Mr. Karpf in the last 5 years total 321.30 hours (excluding time that was spent on matters in Exhibit F) and at a rate of $265.00 per hour totals $85,144.50.  *See* Time Record for Karpf, attached hereto as "Exhibit G." The bulk of the work was performed by Mr. Karpf in this case, who seeks a lower billing rate than Mr. Ely.

### B.  Hours of Wayne Ely for which he seeks compensation

Mr. Ely oversaw the litigation originally when Mr. Karpf worked as an associate for Mr. Ely, served as co-counsel when Mr. Karpf opened his own law firm, and then assisted at trial as lead co-counsel with Mr. Karpf at trial. The hours expended by Mr. Ely in the last 5 years total 100.6 and at a rate of $295.00 per hour totals $29,677.00. *See* Time Record for Ely, attached hereto as "Exhibit H."

### VII.   Conclusion

Plaintiff respectfully requests that this Honorable Court grant her Petition for Attorney's fees in whole because Plaintiff's fees are legally recoverable, the fee petition overall is very reasonable, it is reflective of fair billing rates, and achieves the goals reflected in civil rights jurisprudence and those guidelines reflected in this Circuit.

Respectfully submitted,

**KARPF, KARPF & VIRANT, P.C.**

/s/ Ari R. Karpf
Ari R. Karpf, Esq.

**TIMOTHY M. KOLMAN & ASSOCIATES**

/s/ Wayne A. Ely
Wayne A. Ely, Esq.

Date: August 21, 2009

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KIMBERLY HALPIN : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | No. 1:05-CV-2088 |
| : | |
| DETECTIVE MAURICE GIBSON : | |
| : | |
| Defendant. : | |

## CERTIFICATE OF SERVICE

I certify that on the date set forth below, I served a copy of Plaintiff's Petition for

Attorney's Fees upon the following counsel via ECF:

John C. Eastlack, Jr., Esq.
Holston, MacDonald, Uzdavinis, Eastlack, Ziegler & Lodge
66 Euclid Street
P.O. Box 358
Woodbury, NJ 08096


/s/ Ari R. Karpf
Ari R. Karpf, Esq.

Dated: August 21, 2009