[Dkt. Nos. 100, 101, & 102]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| KIMBERLY HALPIN, | |
|           Plaintiff, | |
|    v. | Civil No. 05-2088 (RMB) |
| DETECTIVE MAURICE GIBSON, | **OPINION** |
|           Defendant. | |

Appearances:

Ari R. Karpf
Karpf, Karpf & Virant, P.C.
Neshaminy Plaza
3070 Bristol Pike
Building 2, Suite 231
Bensalem, PA 19020
    Attorney for Plaintiff

John C. Eastlack, Jr.
Holston, MacDonald, Uzdavinis & Ziegler, PC
66 Euclid Street
P.O. Box 358
Woodbury, NJ 08096
    Attorney for Defendant


**BUMB,** United States District Judge:

**I.   INTRODUCTION**

    This matter comes before the Court upon three motions:

Defendant Maurice Gibson's motion to alter the judgment of the

jury based on qualified immunity [Dkt. No. 100]; Plaintiff

Kimberly Halpin's motion to alter judgment or for judgment as a

matter of law and for a new trial on damages [Dkt. No. 102]; and Plaintiff's motion for attorney's fees [Dkt. No. 101].  Because the parties are deeply familiar with the facts of the case, the Court will recite them only briefly.

## II.  BACKGROUND

On June 18, 2004, Plaintiff Kimberly Halpin was attacked as she was leaving a concert at the Tweeter Center.  During the incident, Plaintiff was injured and her belongings were stolen.  After the assault, Plaintiff flagged down a patrol vehicle which took her to the nearby Camden City Police Administration Building.  While at the police station, Plaintiff was crying, noticeably bleeding and seeking help for the assault she'd suffered.  Defendant Gibson responded to Plaintiff but found her too hysterical to help.  After repeated unsuccessful attempts to calm her down, Defendant Gibson eventually arrested Plaintiff for disorderly conduct and put her into a jail cell.  Plaintiff was released within an hour and went home.

Plaintiff subsequently brought a civil rights law suit against Defendant Gibson, claiming that she was wrongfully arrested without probable cause.[1]  Defendant Gibson moved for summary judgment on the basis of, inter alia, qualified immunity.

---

[1] All other claims and defendants were dismissed prior to the start of the jury's deliberations.

The Court denied the motion, finding that, assuming the facts as Plaintiff presented them, no reasonable officer could believe there was probable cause to arrest Plaintiff.  The case proceeded to trial on August 4, 2009.  Defendant Gibson argued that Plaintiff was arrested with probable cause for violation of the New Jersey disorderly conduct offense.  On August 7, 2009, the jury returned a verdict in favor of Plaintiff, finding that Defendant lacked probable cause and that Plaintiff's arrest was unlawful.  The jury found no compensatory damages but awarded Plaintiff $1 in nominal damages.  The jury also found that Defendant Gibson acted maliciously and awarded Plaintiff $100 in punitive damages.

Before the jury returned its verdict, however, Defendant Gibson moved for dismissal again based on qualified immunity. The Court explained that the legal determination of qualified immunity would depend on the underlying factual circumstances, which the jury would have to resolve.  Accordingly, after the verdict was announced, the jury was called upon to answer special interrogatories concerning the circumstances in the Camden City Police Administration Building on June 18-19, 2004.  Based on these answers, Defendant Gibson now renews his request that the Court determine whether he is entitled to qualified immunity.

Additionally, Plaintiff disputes the jury's finding of no compensatory damages and consequent award of nominal damages.  In

her motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, she requests that the Court vacate the jury's verdict awarding her no compensatory damages and $1 in nominal damages. She further requests a new trial pursuant to Fed. R. Civ. P. 59 to determine the appropriate amount of compensatory damages.

Finally, notwithstanding her other application, Plaintiff seeks an award of attorney's fees based on her status as the prevailing party in this case.

The Court will address each of these motions in turn.

**III. DEFENDANT'S MOTION FOR DETERMINATION ON QUALIFIED IMMUNITY**

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2008) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In this case, the jury determined that Defendant lacked probable cause to arrest Plaintiff; thus, there is no doubt that Defendant Gibson's conduct violated Plaintiff's Fourth Amendment right. The question is whether Defendant should nonetheless be relieved of liability based on qualified immunity. In the probable cause context, a police officer is entitled to qualified immunity "if a reasonable officer could have believed that probable cause

existed to arrest [Plaintiff]."  Hunter v. Bryant, 502 U.S. 224, 228 (1991).

Defendant Gibson argued that he believed he had probable cause to arrest Plaintiff for disorderly conduct under N.J. Stat. Ann. § 2C:33-2b.  That statute provides, in relevant part,

> A person is guilty of a petty disorderly persons offense if, in a public place, and with purpose to offend the sensibilities of a hearer or in a reckless disregard of the probability of so doing, he addresses unreasonably loud and offensively coarse or abusive language, given the circumstances of the person present and the setting of the utterance, to any person present.

N.J. Stat. Ann. § 2C:33-2b.  However, under New Jersey law, a person cannot be charged with this disorderly persons offense for simply using loud, foul, coarse or abusive language; rather, N.J.S.A. 2C:33-2(b) can only be enforced against someone who uses unreasonably loud and offensively coarse or abusive language that would cause an immediate breach of the peace or move the hearer to present violence.  See In re H.D., 206 N.J. Super. 58, 61 (App. Div. 1985).

Based on the jury's responses to the special interrogatories, the Court finds that no reasonable officer could believe that Plaintiff was violating N.J.S.A. 2C:33-2(b), as constitutionally applied.  The jury found that on June 18-19, 2004, 1) there were other persons nearby in the Police Administration Building, 2) that Plaintiff used foul language, 3) that Plaintiff did not make a racially derogatory comment, 4)

that Plaintiff was yelling or screaming, and 5) that Plaintiff
was not flailing her arms.  As set forth above, the law is clear
that loud, foul language alone is insufficient grounds to charge
a person with a disorderly persons offense; rather, there must be
a risk of immediate violence or breach of the peace.

In its initial qualified immunity determination, as
presented in Defendant's earlier motion for summary judgment,
this Court was required to accept the facts as Plaintiff had
plead them – namely, that others were present and that Plaintiff
used foul language only and not racial slurs.  (Opinion, dated
May 21, 2007, at 13).  Based on those presumed facts, the Court
found that "there [was] nothing to suggest that, under the
circumstances and the setting, Plaintiff created a risk of
immediate violence by her words... ."  (<u>Id.</u>).

Now, the jury has made factual findings concerning
Plaintiff's behavior that night.  The jury's factual findings are
congruent with the facts the Court presumed in its earlier
Opinion.  As neither the law nor the facts have changed, the
result must be the same.  Given the jury's factual findings
concerning Plaintiff's behavior, it is unreasonable to believe
that any listeners would be moved to violence by Plaintiff's
yelling and use of foul language.  Accordingly, the Court finds
that Defendant Gibson is not entitled to qualified immunity.

To the extent Defendant argues that he was unaware of the

confines of the law (i.e., that the disorderly persons offense can only be charged against a person who uses language that would cause an immediate breach of the peace or move the hearer to present violence), the Court rejects this argument as a basis for qualified immunity.  Beyond the fact that Defendant Gibson's own testimony belies this argument, the Court has already held that the constitutional application of N.J.S.A. 2C:33-2(b) was clearly established more than 20 years ago.  In re H.D., 206 N.J. Super. 58, 61 (App. Div. 1985).  Although the text of the law, on its face, as it currently appears in "the books", may not explain the proper contours of its constitutional application, the relevant question is not whether the law is "clearly conveyed" but whether it is "clearly established."  Given the New Jersey court's decision in In re H.D., this Court cannot dispute that the constitutional application of the disorderly persons offense has been clearly established.  Thus, Defendant's argument that he had a mistaken view of what is prohibited by the disorderly conduct statute cannot save him.

Accordingly, for the reasons set forth above, the Court finds that Defendant Gibson is not entitled to qualified immunity.

**IV.  PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL ON DAMAGES**

7

As stated above, Plaintiff disputes the jury's finding with regard to nominal damages.  Specifically, in her motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50, she requests that the Court vacate the jury's verdict awarding her no compensatory damages and $1 in nominal damages.  She also requests a new trial pursuant to Fed. R. Civ. P. 59 to determine the appropriate amount of compensatory damages.

**A.   Judgment as a Matter of Law (Rule 50)**

A motion for judgment as a matter of law may be granted where the "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party..." Fed. R. Civ. P. 50(a).  If the court does not grant the party's motion made under Rule 50(a), the party may file a renewed motion for judgment as a matter of law under Rule 50(b) no later than ten days after the entry of judgment.  Fed. R. Civ. P. 50(b).  The same standard applies for motions made under both 50(a) and 50(b).

Judgment as a matter of law under Rule 50 "should only be granted if 'the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief.'" Raiczyk v. Ocean County Veterinary Hospital, 377 F.3d 266, 269 (3d Cir. 2004) (quoting Powell v. J.T. Posey Co., 766 F.2d 131, 133-34 (3d Cir. 1985)).  "'The question is not whether there is literally no evidence supporting the unsuccessful party,

but whether there is evidence upon which a reasonable jury could properly have found its verdict.'" <u>Johnson v. Campbell</u>, 332 F.3d 199, 204 (3d Cir. 2003) (quoting <u>Gomez v. Allegheny Health Servs., Inc.</u>, 71 F.3d 1079, 1083 (3d Cir. 1995)).

In support of her motion for judgment as a matter of law, Plaintiff argues that the evidence in the record does not support the jury's finding of zero compensatory damages.  More specifically, she contends that she "presented undisputed evidence of physical injuries" (i.e., bruises on her arms) whereas Defendant "presented no evidence refuting Plaintiff's claims that she sustained those injuries." (Pl. Motion at 8). Plaintiff also emphasizes that Defendant "called no medical witnesses, and did not present a single witness to refute Plaintiff's claim that she sustained her injuries at the police station." (<u>Id.</u> at 8-9).

In response, Defendant argues that Plaintiff has "ignored several key pieces of evidence presented at trial" which could reasonably have led the jury to infer that the arrest was not the cause of her physical injuries – namely, Plaintiff's own testimony that her backpack was "ripped off" her during the attack at the concert; the testimony of Defendant and other officers disputing Plaintiff's version of the facts that she sustained physical injury at the hands of the police; and the lack of any expert testimony on Plaintiff's behalf that supported

the causative link between the arrest and the bruises on Plaintiff's arms.  (Def. Opp. at 7).

Applying the standard recited above, this Court finds that "there is evidence upon which a reasonable jury could properly have found" that the bruises on Plaintiff's arms were not caused by the unlawful arrest.  <u>Johnson</u>, 332 F.3d at 204 (internal quotation omitted).  It was Plaintiff's burden to prove to the jury that she sustained the bruises because of the arrest.  Although she testified that the bruises happened during the course of her arrest, the jury was free to believe or disbelieve this testimony.[2]  Moreover, Plaintiff did not present any medical expert testimony to show that she sustained the bruises as a result of the arrest.  That Defendant did not introduce medical expert testimony to prove a negative is irrelevant.  Accordingly, the Court cannot find that "the record is critically deficient of that minimum quantity of evidence" that would support the jury's verdict.  <u>Raiczyk</u>, 377 F.3d at 269 (internal quotation omitted).

**B.  New Trial (Rule 59)**

Where the Court denies a motion for judgment as a matter of law under Rule 50, it may still grant an alternative motion for a new trial under Rule 59.  <u>Roebuck v. Drexel University</u>, 852 F.2d 715, 735 (3d Cir. 1988).  Rule 59 states that a court may "grant

---

[2]  Indeed, the jury may very well have believed that Plaintiff's bruises were caused during the attack at the concert when her backpack was "ripped off" her.

a new trial on all or some of the issues ... for any reason for
which a new trial has heretofore been granted in an action at law
in federal court..." Fed. R. Civ. P. 59(a).  Although the
language of Rule 59 does not cite specific grounds for a new
trial, there are many reasons why a new trial may be warranted.
The most commonly raised reasons are:  that there was prejudicial
error of law, that the verdict is against the weight of the
evidence, that the verdict is too large or too small, that there
is newly discovered evidence, that conduct of counsel or of the
court has tainted the verdict, or that there has been misconduct
affecting the jury.  11 C. Wright, A. Miller & R. Kane, <u>Federal
Practice and Procedure</u> § 2805, at 55 (2005); <u>see also</u> <u>Lightning
Lube, Inc. v. Witco Corp.</u>, 802 F. Supp. 1180, 1186 (D.N.J. 1992).

     "The decision to grant or deny a new trial is confided
almost entirely to the discretion of the district court."
<u>Blancha v. Raymark Indus.</u>, 972 F.2d 507, 512 (3d Cir. 1992)
(citing <u>Allied Chemical Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 36
(1980)).  However, the Third Circuit has established different
levels of discretion depending on the proffered grounds for new
trial.  <u>Klein v. Hollings</u>, 992 F.2d 1285, 1289-90 (3d Cir. 1993).
Specifically, "the district court's latitude on a new trial
motion is broad when the reason for interfering with the jury
verdict is a ruling on a matter that initially rested within the
discretion of the court, e.g. evidentiary rulings, or prejudicial

statements made by counsel." Id. (internal citations omitted).
However, the court's discretion to order a new trial is much
narrower where the underlying reason is that the verdict is
against the weight of the evidence. Id. at 1290. Indeed, "new
trials because the verdict is against the weight of the evidence
are proper only when the record shows that the jury's verdict
resulted in a miscarriage of justice or where the verdict, on the
record, cries out to be overturned or shocks our conscience."
Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1353 (3d
cir. 1991) (citing EEOC v. Delaware Dep't of Health & Social
Servs., 865 F.2d 1408, 1413 (3d Cir. 1989)).

In this case, Plaintiff claims that a new trial is warranted
for two reasons: (1) the verdict is against the weight of the
evidence; and (2) the Verdict Sheet was internally inconsistent
and conflicted with the Court's instructions to the jury.

As the Court has explained above, there is sufficient
evidence in the record from which the jury could have inferred
that Plaintiff did not sustain the bruises during the arrest but,
rather, during the prior assault at the concert. Accordingly,
the Court cannot find that the jury's verdict "resulted in a
miscarriage of justice" or "cries out to be overturned or shocks
our conscience." Williamson, 926 F.2d at 1353.

The Court now turns to Plaintiff's argument concerning the
alleged inconsistency of the jury's verdict. At the trial, the

Court instructed the jury that "if you find actual injury, you must award compensatory damages as I instructed you, rather than nominal damages." (Instruction 20). During deliberations, the jury completed the Verdict Sheet, upon which, the Court must note, both Plaintiff and Defendant had agreed. In answering question 2 on the Verdict Sheet, the jury found that "the acts of Defendant Gibson were the proximate or legal cause of damages sustained by Plaintiff[.]" (Verdict Sheet, Question 2). In answering questions 3 and 4, the jury awarded Plaintiff zero compensatory damages and, instead, awarded nominal damages in the amount of $1. Presuming that the jury followed Instruction 20, see, e.g., U.S. v. Restaino, 405 F.2d 628, 630 (3d Cir. 1968), their award of nominal damages in lieu of compensatory damages means that they did not find "actual injury." Plaintiff argues that this finding is inconsistent with their answer to question 2 on the Verdict Sheet - that Plaintiff sustained "damages" as the proximate cause of Defendant's actions. In other words, Plaintiff explains, the jury's findings are contradictory – on one hand, they found that Plaintiff sustained "damages" yet on the other, they found that Plaintiff did not have any "actual injury."

In this Court's view, there are two possible ways of reconciling the jury's answers. First, as Defendant argues, the fact that the jury found that Plaintiff suffered "damages" does

not necessarily mean that it also found that she sustained "actual injury." The term "damages" may hold a different meaning than "actual injury." The jury could have found that the "damages" Plaintiff suffered as a result of the unlawful arrest were of an intangible nature (i.e., the violation of her constitutional rights) and that they did not amount to any "actual injury" (i.e., physical or emotional injury).

Second, the jury could have found that the Plaintiff did suffer "actual injury" but failed to prove (by a preponderance of the evidence) how much her injury was worth or that it was worth anything at all. This explanation comports with the beginning of Instruction 20, which states that, "[i]f you return a verdict for Plaintiff Halpin, but find that she has failed to prove compensatory damages, then you must award nominal damages of $1.00." It is more difficult to square this explanation with the end of Instruction 20, which says, "if you find actual injury, you must award compensatory damages ... rather than nominal damages." (Instruction 20). Because the jury awarded nominal damages, it would seem they had found that there was no actual injury, which would contradict their finding that there was actual injury. However, the jury was to follow the instructions as a whole. Thus, even if they found that Plaintiff suffered actual injury and therefore deserved compensatory damages, they were instructed not to award compensatory damages if they found

14

that Plaintiff had failed to prove the value of such damages, as
the first part of Instruction 20 states.  In other words, they
may have done a loop within Instruction 20[3] – they may have found
that Plaintiff suffered actual injury and, thus, was entitled to
compensatory damages, but that she also failed to prove the value
of such injury (or that it was worth anything at all), so they
awarded her zero compensatory damages, which required them to
award her nominal damages of $1.  Therefore, this second
explanation also offers a plausible reconciliation of the
apparent contradiction.

The law is clear that "a trial court is 'under a
constitutional mandate to search for a view of the case that
makes the jury's answers consistent.'"  <u>McAdam v. Dean Witter
Reynolds, Inc.</u>, 896 F.2d 750, 764 (3d Cir. 1990) (quoting <u>United
States v. 0.78 Acres of Land, More or Less</u>, 81 F.R.D. 618, 621
(E.D. Pa. 1979), <u>aff'd without opinion</u>, 609 F.2d 504 (3d Cir.
1979)); <u>see also</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 806
(1986) (Stevens, J., dissenting) (noting that "when faced with an
apparently inconsistent verdict, a court has a duty to attempt to
read the verdict in a manner that will resolve inconsistencies"
and collecting cases).  The Court's role is "not to weigh the
reasonableness of the [Plaintiff's] view[] with that of

---

[3] Instruction 20 parrots the language found in Instruction
4.8.2 of the Third Circuit Model Civil Jury Instructions.

[Defendant's] view."  Id. at 765.  Rather, the Court must determine whether there is "'any view of the case which reconciles the [jury's] various answers.'"  Id. at 764 (quoting Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1159 (3d Cir. 1989)) (emphasis in original).  Both of the explanations above accomplish this task and, thus, the Court must uphold the jury's verdict.  Id. (upholding the district court's "molding of the verdict" where there was a view of the case that reconciled the jury's answers); see also Butler v. Frett, 2006 WL 1806412, at *5 (D.N.J. June 29, 2006) (jury found that police officer's conduct "proximately caused Plaintiff's injuries" but that Plaintiff was nonetheless entitled to $1 in nominal damages).

Given the above analysis, the Court finds that a new trial is not warranted.  Accordingly, Plaintiff's motion will be denied.


**V.  PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

Pursuant to 42 U.S.C. § 1988, a district court is authorized to award reasonable attorney's fees to the prevailing party in a § 1983 case.  42 U.S.C. § 1988(b)[4]; see also City of Riverside v. Rivera, 477 U.S. 561, 567 (1986).  Although the language of §

---

[4]  Section 1988 states in relevant part: "[i]n any action or proceeding to enforce a provision of section[] ... 1983 ... of this title ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).

16

1988(b) leaves the determination of whether to award attorney's fees to the discretion of the district court, "it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances." Truesdell v. Philadelphia Housing Authority, 290 F.3d 159, 163 (3d Cir. 2002) (internal quotation omitted).

A plaintiff may be considered a "prevailing party" for purposes of attorney's fees if she "'succeed[s] on any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit.'" Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)); see also Texas State Teachers Ass'n v. Garland Independent School Dist., 489 U.S. 782 (1989) ("to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant"). The law is well established that "a plaintiff who wins nominal damages is a prevailing party under § 1988." Farrar v. Hobby, 506 U.S. 103, 112 (1992).

Based on the above law, the parties in this case do not dispute that Plaintiff is a "prevailing party" as contemplated by § 1988. However, as the Supreme Court held in Farrar,

> [a]lthough the "technical" nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. Once civil rights litigation materially alters the legal relationship between the parties, "the degree of the plaintiff's

17

> overall success goes to the reasonableness" of a fee
> award under <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983).
> [citation omitted]  Indeed, "the most critical factor"
> in determining the reasonableness of a fee award "is
> the degree of success obtained."  [<u>Id.</u> at 436].

<u>Farrar</u>, 506 U.S. at 114 (internal citations omitted).  The Court further stated that, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."  <u>Farrar</u>, 506 U.S. at 115.  Thus, the issue in this case is whether Plaintiff's award (i.e., $1 in nominal damages and $100 in punitive damages) constitutes a sufficient "degree of success" to warrant the award of attorney's fees.

### A.  Degree of Success

In evaluating a plaintiff's "degree of success," courts in the Third Circuit are instructed to consider what have become known as "the O'Connor Factors."  <u>Jama v. Esmor Correctional Servs., Inc.</u>, 577 F.3d 169, 176 (3d Cir. Aug. 12, 2009); <u>Buss v. Quigg</u>, 91 Fed. Appx. 759, 761 (3d Cir. 2004); <u>Butler v. Frett</u>, 2006 WL 1806412, at *5 (D.N.J. June 29, 2006).  Justice O'Connor, in her concurring opinion in <u>Farrar</u>, stated that in addition to the difference between the damages sought and the amount actually recovered, courts should consider other factors, including "the significance of the legal issue on which the plaintiff claims to have prevailed" and whether or not the plaintiff "accomplished some public goal... ."  <u>Farrar</u>, 506 U.S. at 121-22 (O'Connor, J.,

18

concurring).  Accordingly, "a district court determining the
degree of a plaintiff's success should consider not only the
difference between the relief sought and achieved, but also the
significance of the legal issue decided and whether the
litigation served a public purpose."  <u>Jama</u>, 577 F.3d at 176.

### 1.  Extent of Relief

"The extent of relief factor weighs the judgment recovered
against the judgment sought by the prevailing party."  <u>Butler</u>,
2006 WL 1806412 at *5.  In this case, Plaintiff did not specify a
particular dollar amount she sought, which makes a comparative
analysis difficult.  However, it is safe to say that she sought
more than $1 (or $101, including the punitive award), as
demonstrated by her motion for a new trial on damages.  It is
also safe to say that this case is not in the same league as the
discrepancy in <u>Farrar</u>, where the plaintiff sought $17 million and
only received $1.  <u>Farrar</u>, 506 U.S. at 108.  Rather, the Court
thinks it reasonable to consider the discrepancy in this case as
similar to that in <u>Butler</u>, 2006 WL 1806412 at *6, where the
defendant sought in excess of $100,000 but only received $1, and
<u>Buss</u>, 2002 WL 31262060, at *7 (E.D. Pa. Oct. 9, 2002), <u>aff'd</u> 91
Fed. Appx. 759, where the plaintiff sought $150,000 but only
received $3.  In both of those cases, the district courts found
that the discrepancies did not "rise to the level that concerned
the court in <u>Farrar</u>" and, thus, this factor weighed in favor of

awarding attorney's fees.   <u>Buss</u>, 2002 WL 31262060, at *6;
<u>Butler</u>, 2006 WL 1806412 at *5-6.

Because the Court believes that the discrepancy in this case
(although an actual number is unknown) is likely more akin to
those found in <u>Buss</u> and <u>Butler</u> as opposed to that in <u>Farrar</u>, the
Court finds this factor "weighs at least slightly, in favor of
awarding some measure of attorney's fees."  <u>Butler</u>, 2006 WL
1806412 at *6.

### 2.  Significance of Legal Issue

The second factor the Court must consider is the
significance of the legal issue on which Plaintiff prevailed.
Here, Plaintiff succeeded on her claim for violation of her
Fourth Amendment right to be free of unlawful arrest.  This is
undoubtedly an important constitutional right that must be
protected.  <u>Buss</u>, 91 Fed. Appx. at 761 (noting the "legal
significance of unreasonable search and seizure and the public
purpose of deterring such behavior" and awarding attorney's
fees).  In <u>Butler</u>, the court emphasized the contrast between the
significance of the plaintiff's excessive force claim and the
injury to a business interest alleged in <u>Farrar</u>, noting that
"'vindication of the constitutional right to be free from cruel
and unusual punishment is a significant legal issue in contrast
to the injury to a business interest alleged in <u>Farrar</u>.'"  <u>Id.</u>
(quoting <u>Jones v. Lockhart</u>, 29 F.3d 422, 424 (8th Cir. 1994)).

20

Similarly, in this case, the Court finds that Plaintiff's Fourth Amendment violation is sufficiently significant to "tip this factor in favor of awarding fees."  Id.

### 3. Public Purpose

The third factor to consider is whether the plaintiff's victory serves any public interest.  The fee-shifting provision of Section 1988 is not intended to be "'a relief Act for lawyers'" but, rather, "a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorney's fees available under a private attorney general theory."  Farrar, 506 U.S. at 122 (O'CONNOR, J., concurring) (quoting Riverside v. Rivera, 477 U.S. 561, 588 (1986) (REHNQUIST, J., dissenting)).  In Butler, the court recognized that although the plaintiff's success on her bystander liability claim against a police officer would "not cause a formal change in police policy or training," it still had "public value to the extent that it furthers the 'private attorney general' function of civil right suits encouraged by § 1988." Butler, 2006 WL 1806412 at *6 (citing Buss, 2002 WL 31262060, at *8; Farrar, 506 U.S. at 120; Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402 (1968) (noting "private attorney general" function of fee-shifting provisions)).

In this case, the Court hopes that the verdict in favor of Plaintiff will effect a change in police policy in New Jersey

and, perhaps, even legislative change.  This is not the first case this Court has had involving the unconstitutional application of the New Jersey Disorderly Persons Offense; clearly something should be done to clarify when an arrest is constitutional under this provision.  However, even if no such changes are made, Plaintiff's success still has "public purpose" in that it furthers the "private attorney general" function of civil right suits.  <u>Buss</u>, 91 Fed. Appx. at 761 (emphasizing the "legal significance of unreasonable search and seizure and the public purpose of deterring such behavior").  Accordingly, this factor also weighs in favor of awarding attorney's fees in this case.

Based on the analysis of the appropriate factors, the Court finds that Plaintiff is entitled to an award of attorney's fees in this case.

**B.  Effect of Punitive Damages Award**

The Court's determination that the degree of Plaintiff's success is sufficient to merit an award of attorney's fees is further bolstered by the $100 punitive award she received.  In <u>Jama</u>, the Third Circuit held that a successful pendant state claim "may inform the degree of [a plaintiff's] overall success for purposes of § 1988" if the federal fee-eligible claim and the pendant state claim "involved a 'common core of facts' or were based on 'related legal theories.'"  <u>Jama</u>, 577 F.3d at 179-180.

Although the facts in that case concerned a successful pendant state claim, the reasoning is equally applicable, if not more so, to a claim for punitive damages.  There can be no doubt that Plaintiff's punitive damages claim and her unlawful arrest claim "involved a 'common core of facts' or were based on 'related legal theories.'"  Id.  Indeed, Plaintiff's punitive damages claim was predicated on the success of her underlying unlawful arrest claim – it simply added an additional element of malice.  Based on the reasoning in Jama, this Court finds it appropriate to consider Plaintiff's success (however limited) on her punitive damages claim in determining her degree of success.  Nonetheless, even without consideration of her punitive award, the Court has already found that an award of attorney's fees is appropriate in this case.

**C.  Reasonableness of Fees Requested**

"'[A] reasonable attorney's fee' is one that is 'adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys.'"  Blum v. Stenson, 465 U.S. 886, 897 (1984) (quoting S. Rep. No. 94-10011, p. 6 (1976)).  The party seeking attorney's fees bears the burden of showing the reasonableness of its request.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  To meet this burden, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."  Hensley v. Eckerhart, 461 U.S.

424, 433 (1983).  The Court then develops an initial estimate of reasonable fees using the "lodestar" formula, which is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate."  Blum , 465 U.S. at 888 (citing Hensley, 461 U.S. 424); Rode, 892 F.2d at 1183.  A reasonable hourly rate is based on "the prevailing market rates in the relevant community... ."  Blum , 465 U.S. at 895.

While the lodestar is presumed to be the reasonable fee, "[t]he district court has the discretion to make certain adjustments to the lodestar."  Rode, 892 F.2d at 1183.  However, "a court may not sua sponte reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate, either by filing affidavits, or, in most cases, by raising arguments with specificity and clarity in briefs (or answering motion papers)."  Bell v. United Princeton Properties, Inc., 884 F.2d 713, 720 (3d Cir. 1989).

In objecting to a fee application, a party "cannot merely allege in general terms that the time spent was excessive."  Id. Rather, the party must "generally identify the type of work being challenged, and second, they must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable."  Id.  However, this does not mean that a party challenging a fee award must always challenge specific time

24

entries.  Indeed,

> [i]t would be nearly impossible, or at least
> extraordinarily burdensome, for parties who wish to
> contend that the time spent by a fee applicant was
> excessive in light of counsel's expertise, or in light
> of the simplicity of the case, or who wish to raise
> some similar contention that might affect an entire
> category of work done by counsel, to point to all the
> entries that they believe to be unreasonable.

Id.

In this case, Plaintiff's attorneys request a total of
$114,821.50 in fees for their work on this case over the course
of five years.  Plaintiff's attorney, Mr. Ari Karpf, Esq., has
submitted billing reports showing that he expended a total of
356.6 hours working on Plaintiff's case.  (Pl. Motion, Ex. F, G).
However, Mr. Karpf has agreed to deduct 35.3 hours of this time
because it was "only related to Defendant's [sic] Rios, Perez,
and Spillane (who were dismissed at different stages of the
litigation)." (Pl. Motion at VI; Ex. F).  Mr. Karpf seeks
approval of a billing rate of $265 per hour, based on his
experience and the prevailing rate in the community, and has
submitted several affidavits in support of the reasonableness of
such rate.  (Id., Exs. A-E).  Accordingly, Mr. Karpf requests
fees in the amount of $85,144.50 (i.e., 321.3 hours at
$265/hour).

In addition to Mr. Karpf's fees, Plaintiff also seeks fees
for a second attorney, Mr. Wayne Ely, Esq..  According to
Plaintiff's motion, although Mr. Karpf performed "the bulk of the

work" in this case, Mr. Ely "oversaw the litigation originally
when Mr. Karpf worked as an associate for Mr. Ely, served as co-
counsel when Mr. Karpf opened his own law firm, and then assisted
at trial as lead co-counsel with Mr. Karpf at trial." (<u>Id.</u> at
VI.B).  Mr. Ely has submitted billing reports showing that he
expended a total of 100.6 hours on this matter.  (<u>Id.</u>, Ex. H).
He requests approval of a billing rate of $295 per hour, based on
his experience and the prevailing rate in the community, and has
submitted several affidavits in support of the reasonableness of
such rate.  (<u>Id.</u>, Exs. A-E).  Accordingly, Mr. Ely requests fees
in the amount of $29,677 (i.e., 100.6 hours at $295/hour).

Defendant does not take issue with either of the requested
billing rates for Plaintiff's counsel but opposes Plaintiff's fee
application on the basis of the hours claimed.  He argues that
"the petitioned fees of $85,144.50 for Mr. Karpf and $29,677.00
for Mr. Ely are excessive for how much time a reasonable attorney
would expend to litigate Plaintiff's unlawful arrest claim."
(Def. Opp. at 15).  More specifically, he claims that the time
Plaintiff's counsel spent conducting research, preparing for
depositions, drafting pleadings and preparing for trial is
"excessive in light of the Plaintiff's lone unlawful arrest claim
[against Defendant Gibson]."  (<u>Id.</u>).  Finally, Defendant objects
to the fees Plaintiff's counsel seeks for "procedural matters."
(<u>Id.</u>).  Although he does not challenge specific time entries as

unreasonable, the law does not require this type of challenge, as discussed above.

First, Plaintiff's counsel should be awarded reasonable fees for the claims on which she prevailed.  Rode, 892 F.2d at 1183 ("The court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained.").[5]  Thus, Mr. Karpf subtracted 35.3 hours on account of his work that related only to those defendants who were dismissed from the case. However, in this Court's view, this deduction does not sufficiently address Plaintiff's limited success.  The deduction of 35.3 hours does not fully account for all the time spent on the unlawful arrest claim against Defendant Rios, who, unlike the other dismissed defendants, was not dismissed until the last day of trial.  Moreover, as Defendant points out in his opposition, Plaintiff only succeeded on her unlawful arrest claim against Defendant Gibson; she did not succeed on her excessive force claim against any defendant.  Mr. Karpf's billing record does not take into account Plaintiff's lack of success on her excessive force claim.  The Court must determine an appropriate reduction of fees so that the award is "only that amount of fees that is reasonable in relationship to the result obtained." Hensley, 461 U.S. at 440.

---

[5]  "This adjustment should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar." Rode, 892 F.2d at 1183.

There is no single approach for determining how to reduce a fee for lack of success.  The Court may exclude the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed." Rode, 892 F.2d at 1183.  However, "[w]here successful and unsuccessful claims share a common core of facts and related legal theories, it may be impossible to parse out the hours spent litigating the successful claims from the unsuccessful claims." Butler, 2006 WL 1806412 at *11 (citing Hensley, 461 U.S. at 435).  The Court may also consider the amount of the compensatory damages awarded in determining how to adjust an award to reflect limited success.  However, it must be careful not to "diminish counsel fees ... to maintain some ratio between the fees and the damages awarded." Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1041-42 (3d Cir. 1996).

In this case, although the Plaintiff's successful and unsuccessful claims against the various defendants are not "distinct in all respects" from one another, the Court finds that a reduction of hours is the best way to adjust the fee award to reflect her limited success.  As to unsuccessful unlawful arrest claim against Defendant Rios, the Court believes it is reasonable to reduce by half (because there were two defendants) the significant blocks of time Mr. Karpf spent on trial preparation

28

and the three days of trial while Defendant Rios was still in the case.  As recorded in his billing report, Mr. Karpf spent 34.9 hours on trial preparation[6] and 25 hours in court during the first three days of trial.[7]  (Pl. Motion, Ex. G).  Accordingly, the Court will reduce Mr. Karpf's time by 29.95 hours (i.e., 34.9 + 25 / 2).

As to the unsuccessful excessive force claim, the Court dismissed Plaintiff's excessive force claim in its summary judgment Opinion on May 21, 2007 [Dkt. No. 50].  According to Mr. Karpf's billing records, he expended 113.1 hours from the beginning of the case through the date the Court dismissed Plaintiff's excessive force claim.  (Pl. Motion, Ex. G).  In this Court's view, it is reasonable to presume that Mr. Karpf spent half of this time on the excessive force claim and half on the unlawful arrest claim (on which Plaintiff ultimately succeeded).  Thus, the Court will subtract half of this time (i.e., 56.55 hours) from Mr. Karpf's fee application.  See, e.g., Butler, 2006 WL 1806412 at *11 (where plaintiff prevailed on half the claims tried, court "reduce[d] the lodestar by 50% to reflect

---

[6]  Mr. Karpf's billing report shows that he spent the following time on trial preparation:  7.5 hours on 4/29, 6 hours on 7/29, 4.5 hours on 7/30, 4.5 hours on 7/31, 3.2 hours on 8/4, 6.7 hours on 8/5, and 2.5 hours on 8/6.  (Pl. Motion, Ex. G).

[7]  Mr. Karpf's billing report shows that he spent the following time in court during the first three days of trial:  8 hours on 8/4, 8 hours on 8/5, and 9 hours on 8/6.  (Pl. Motion, Ex. G).

[plaintiff's] limited degree of success").

Second, the Court agrees with Defendant that the amount of time expended in this case was excessive "in light of counsel's expertise" and "the simplicity of the case." <u>Bell</u>, 884 F.2d at 720. Indeed, in his own affidavit, Mr. Karpf emphasizes his professional expertise in civil rights law, stating that he has been practicing in this area since 2003, that he has litigated more than 340 federal cases throughout Pennsylvania and New Jersey, 95% of which were based on state and federal civil rights statutes, that he is "well versed in state and federal civil rights practice and current civil rights trends[,]" and that he worked at a civil rights firm for two years before opening his own firm. (Pl. Motion, Ex. A). Additionally, this particular matter was a very simple case involving one plaintiff, one incident and two claims premised on basic civil rights violations. The initial six defendants were pared down to just two defendants in the Court's summary judgment Opinion.

Given these facts, the Court does not find it reasonable to award attorney's fees for two lawyers in a case that could have been handled by one lawyer. Because Mr. Karpf served as lead counsel, as demonstrated by the amount of time he spent working on this case, the Court finds it reasonable to award fees for his hours, deducting the 16.6 hours he spent working with Mr. Ely. However, the Court recognizes the value of having a second lawyer

to serve as a sounding board for the lead lawyer in preparing for trial.  Accordingly, the Court will award fees for attorney conferencing at the rate of one hour per day of trial, or 4 hours per attorney.  In sum, the Court will award fees for 222.2 hours (i.e., 321.3 - 29.95 - 56.55 - 16.6 + 4) based on Mr. Karpf's billing report.

As to the hours billed by Mr. Ely, the Court will deny those as duplicative of Mr. Karpf's efforts, for the reasons explained above, with several exceptions.  First, as Mr. Ely participated (or perhaps was responsible for) the initial 2-hour introduction between Plaintiff and Mr. Karpf, the Court will award fees for that time; however, just as the Court awarded only half of Mr. Karpf's time early in the case on account of Plaintiff's unsuccessful excessive force claim, the Court will similarly award only half of My. Ely's time for this introduction (i.e., one hour).  (Pl. Motion, Ex. H).  Second, it appears that Mr. Ely handled the motions in limine as well as the deposition of Dr. Sarah Robins on his own.  This saved Mr. Karpf from having to conduct these tasks.  Thus, the Court will award fees for the 5.9 hours Mr. Ely spent in connection with the motions in limine and the 8 hours he spent preparing for and taking the deposition of Dr. Robins.  Third, the Court will award fees for 4 hours of attorney conferencing, as discussed above.  In sum, the Court will award fees for 18.9 hours (1 + 5.9 + 8 + 4) based on Mr.

Ely's billing report.

Finally, the Court rejects Defendant's argument that Plaintiff's counsel improperly billed for "procedural matters." In her fee application, Plaintiff explicitly states that her attorneys are "not seeking compensation for any time expended by the paralegals and legal assistants" despite their involvement in this case.  (Pl. Motion at VI).  Seeing as how Plaintiff's counsel have already subtracted any fees for the less substantive work performed by their paralegals and legal assistants, the Court finds it unnecessary to subtract any further fees on account of procedural matters.

In sum, the Court will award the following reasonable attorney's fees:  $58,883 for the 222.2 hours Mr. Karpf expended at a billing rate of $265 per hour; and $5,575.50 for the 18.9 hours Mr. Ely expended at a billing rate of $295 per hour.  The total award will be $64,458.50, which counsel are free to divide among themselves as they see fit, notwithstanding the allocation used by the Court for purposes of calculation.


**V.  CONCLUSION**

For the reasons set forth above, the Court will deny Defendant's motion to alter the judgment of the jury, deny Plaintiff's motion for a new trial, and grant Plaintiff's motion for attorney's fees.  An appropriate order will issue this date.

32

Dated:  October 9, 2009          s/Renée Marie Bumb
                                 RENÉE MARIE BUMB
                                 United States District Judge